## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KURT CARLSON and ELAINE CARLSON, | ) ) ) C.A. NO.: 3:17-CV-01916-VLB |
|                Plaintiffs, | ) |
|   v. | ) ) |
| CBS CORPORATION, et al. | ) ) |
|                Defendants. | ) |
| _____ ) | APRIL 12, 2019 |

### DEFENDANT GENERAL ELECTRIC CO.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

General Electric Co. ("GE") submits this memorandum of law in support of its Motion for Summary Judgment.  For the reasons stated in the Memorandum, there is no genuine dispute as to any material fact and GE is entitled to judgment as a matter of law.

### I.  INTRODUCTION AND STATEMENT OF FACTS

Plaintiffs Kurt Carlson and Elaine Carlson allege that Plaintiff Kurt Carlson ("Plaintiff") contracted mesothelioma as a result of his exposure to asbestos-containing products manufactured by a number of defendants, including GE, through his work as a radiological control technician at the Electric Boat Division of General Dynamics ("Electric Boat") from 1973 – 1974.  *See* GE's Statement of Undisputed Material Facts ("SOUMF") at ¶¶ 1, 3.

Plaintiff's Answers to Interrogatories and Requests for Production fail to identify GE, let alone an asbestos-containing GE product to which he was allegedly exposed.  SOUMF ¶ 5.  During his deposition, Plaintiff failed to identify GE, let alone an asbestos-containing GE product to which he was allegedly

exposed.  SOUMF ¶ 9.  Indeed, as a radiological control technician at Electric Boat, Plaintiff did not perform any work, maintenance or repair on any equipment or machinery.   SOUMF ¶ 7.   Moreover, he could not identify any work, maintenance, or repair on any equipment or machinery that may have been performed in his presence.  SOUMF ¶ 8.

Plaintiff has not produced any admissible evidence, whether documentary or testimonial, that he worked with, in close proximity to, or was otherwise exposed to any product that was manufactured, sold or distributed by GE. SOUMF ¶ 11.  There is no evidence or testimony that Plaintiff inhaled any asbestos fibers or dust from any product manufactured, sold or distributed by GE. SOUMF ¶ 12.

Accordingly, because Plaintiff has not offered any admissible evidence demonstrating that he was exposed to any asbestos-containing product manufactured by GE, summary judgment should entered in GE's favor pursuant to Fed. R. Civ. P. 56. [1]

## II.    STANDARDS APPLICABLE TO RULE 56 SUMMARY JUDGMENT MOTIONS

"A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the

---

[1] In evaluating the merits of GE's summary judgment motion, this Court must view the evidence and all inferences arising reasonably therefrom in the light most favorable to Plaintiff.  *Lexington Ins. Co. v. Western Pa. Hosp.*, 423 F.3d 318, 322 n.2 (3d Cir. 2005); *Hogston v. Allis-Chalmers Corp.*, 2009 WL 4583501 at *1 (E.D. Pa. Dec. 3, 2009).  The Statement of Facts contained in this Memorandum is intended to reflect that particular standard and, as such, is offered solely for purposes of the instant motion and does not constitute GE's admission of any fact stated herein for any other purpose.  GE also reserves to the time of trial any and all defenses it may have to plaintiff's claim, including, without limitation, the government contractor and/or the sophisticated user defenses.

ME1 30165767v.1

facts as to which there is no such issue warrant judgment for the moving party as a matter of law." *Bedor v. Friendly's Ice Cream Corp.*, 392 F. Supp. 2d 367, 373 (2005); Fed. R. Civ. P. 56(c).   Rule 56(c) "mandates the entry of summary judgment… against a party who fails to make a showing sufficient to establish the existence of an element essential to a party's case, and on which that party will bear the burden of proof at trial." *Bedor*, 392 F. Supp. 2d at 373 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)).

When ruling on a motion for summary judgment, the court must respect the province of the jury. *Bedor*, *supra*.   The court is not to try issues of fact.  "It is well established that "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 3d. 2002, 106 S. Ct. 2505 (1986).   The court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined… to issue finding; it does not extend to issue resolution." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. *Bedor*, 392 F. Supp. 2d at 374.  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.   An issue is 'genuine… if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Bedor*, *supra* (quoting *Anderson*, 477 U.S. at 248).  "A

3

material fact is one that would 'affect the outcome of the suit under the governing law.'" *Id.* "Only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. Immaterial or minor facts will not prevent summary judgment." *Bedor*, *supra*. (citations omitted.)

The court, in reviewing evidence on a motion for summary judgment, must "assess the record in the light most favorable to the non-movant and... draw all reasonable inferences in [its] favor. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). "Nonetheless, inferences drawn in favor of the nonmovant must be supported by the evidence." *Bedor*, *supra*. "'Mere speculation or conjecture' is insufficient; there must be evidence on which a jury could reasonably find for the nonmovant." *Anderson*, 477 U.S. at 252.

"The nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material facts exists." *Bedor*, *supra* (citing *Celotex*, 477 U.S. at 324.)

> Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, *Weinstock*, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, which must demonstrate more than some metaphysical doubt as to the material facts . . . [and] must come forward with specific facts showing that there is a genuine issue for trial.

*Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993). If the nonmovant fails to meet this burden, summary judgment should be granted. *Bedor*, *supra*.

III.   **ARGUMENT**

    A.   **THIS COURT HAS MARITIME JURISDICTION AND THEREFORE SUBSTANTIVE MARITIME LAW APPLIES TO PLAINTIFFS' CLAIMS**

As a threshold matter, this Court must first determine which law to apply. There is a conflict between the substantive law of Connecticut and maritime law. Moreover, there can be no question that Plaintiff's claims against GE arose out of Plaintiff's work aboard boats on navigable waters.  Therefore, maritime law has the most significant relationship to Plaintiffs' claims.

    1.   **Conflict between Connecticut state law and federal maritime law.**

The United States Supreme Court has described federal maritime law as an "'amalgam of traditional common-law rules modifications of those rules, and newly created rules,' drawn from both state and federal sources." *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 878 (1997), quoting *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986).  In *East River*, the Supreme Court recognized products liability, as well as strict liability and the application of the Restatement (Second) of Torts § 402A (1965), as a part of the general maritime law.  *East River*, 476 U.S. at 865.

A comparison of the Connecticut Products Liability Act and Connecticut's wrongful death statute with maritime tort law reveals substantial differences.  For example, one can argue that the Connecticut Products Liability Act does not allow for the apportionment of damages between settling and non-settling defendants such that the non-settling defendants receive a credit for pre-trial settlements.  *See* Conn. Gen. Stat. § 52-572o(d) (allowing apportionment only against "each party liable."); *cf.* Conn. Gen. Stat. § 52-572h(d) (in negligence

actions, allowing apportionment of damages against "each party whose negligent actions were a proximate cause of the injury, death or damage to property, including settled or released persons …").  Nor does Connecticut law favor the granting of any credit by way of remittitur to non-settling defendants for money received by the plaintiff through settlement.  *See Mahon v. Unitron Manufacturing, Inc.*, 284 Conn. 645, 661-672 (2007).  By contrast, general maritime law allows for the apportionment of damages between settling and non-settling defendants and for settlement credits against the damages found by the trier of fact.  *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 220-21 (1994).  In *McDermott*, the Supreme Court adopted the "proportionate share rule" for application in maritime cases.  Under this rule, the money paid by way of settlement extinguishes any claim that the injured party has against the settling tortfeasor and also diminishes the claim that the injured party has against the other tortfeasors by the amount of the equitable share of the obligation of the released tortfeasor.  *Id.* at 209.

Connecticut law and maritime law also differ substantially with respect to liability for after-applied insulation and replacement parts.   Under federal maritime law a defendant is only legally responsible for component parts which it either manufactured or distributed.  *Lindstrom v. A-C Prod. Liability Trust*, 424 F.3d 488, 494-95 (6th Cir. 2005).  In addition, Judge Robreno, the Presiding Judge of the MDL-875 consolidated asbestos docket has determined that, under maritime law, a defendant is not responsible for injuries caused by component parts which it neither manufactured nor distributed.  *See Gitto v. A.W. Chesterton Co., Inc.*, 2010 WL 3359484 at *5 (E.D. Pa. June 30, 2010).  In contrast, there is no

6

Connecticut case law specifically holding that a product manufacturer is not responsible for component parts it did not manufacture, distribute or sell.

The differences between Connecticut state law and federal maritime law highlighted here are substantial and real.  They are not intended, however, to be an exhaustive list.  There may be other issues which arise at trial which present a conflict of laws between the law of Connecticut and general maritime law and GE reserves the right to rely upon general maritime law for the resolution of all such conflicts.

2.     <u>Substantive maritime law applies to Plaintiff's claims against GE.</u>

General maritime law is an area of federal substantive law that "'is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules,' drawn from both state and federal sources." *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 878 (1997) (citing *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986)).  In *East River*, the United States Supreme Court recognized products liability, as well as strict liability and the application of Restatement (Second) of Torts § 402A (1965), as a part of the general maritime law.  476 U.S. at 865.

In a products liability case, maritime law applies when the plaintiff's underlying exposure to a defendant's product satisfies a two-part test.  First, under the location test, the court "must determine whether the tort occurred on navigable water or . . . [the] injury suffered on land was caused by a vessel on navigable water." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995); *see also Thibodeau v. United States*, 2015 U.S. Dist. LEXIS

7

134227 at *4-7 (D. Conn. Sep. 30, 2015) (citing *Grubart*, 513 U.S. at 534)).  "[I]n the case of asbestos-related disease arising from work on or around ships, . . . [the] test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters."  *Thibodeau*, 2015 U.S. Dist. LEXIS 134227 at *4-7; *see also Sisson v. Ruby*, 497 U.S. 358 (1990) (finding that work performed aboard a ship that is docked at a shipyard is considered work performed on navigable waters); *Deuber v. Asbestos Corp. Ltd.*, No. 10-78931, 2011 WL 6415339, at *1 (E.D. Pa. Dec. 2, 2011) (Robreno, J.) (applying maritime law to ship in "dry dock" for overhaul); *Miller v. A.W. Chesterton Co.*, No. 07-67107 at *4 (E.D. Pa. May 14, 2012) (finding that the alleged exposure occurred on navigable waters where the ships were in "dry dock" for decommissioning or re-commissioning).

Second, under the connection test, the court must "assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce" and "must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity."  *Grubart*, 512 U.S. at 534 (internal quotations omitted; internal citations omitted).

In *Hammer*, the court examined the question as to whether maritime law should be applied to a case where, as in the instant matter, the plaintiff alleges exposure to asbestos aboard a maritime vessel.  In opposing the application of maritime law, the plaintiff argued, *inter alia*, that asbestos exposure on a ship did not have a significant relation to traditional maritime activity and therefore, it was Connecticut law that should be applied to plaintiff's claims.  *Hammer v. A.L.*

8

*Burbank & Co., LTD.*, No. CV-09-5026283S, Memorandum of Decision, November 2, 2012 (Bellis, J.) at p.4.  In rejecting the plaintiff's arguments, the court examined the factors to be analyzed under the significant relationship tests for choice-of-law espoused by Connecticut: the place where the injury occurred, the place where the conduct causing the injury occurred, the domicile, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship, if any, between the parties is centered.  *Id.*  Applying the facts of the case to those factors, the court found "that Connecticut choice of law principles militate in favor of application of federal maritime law to the facts of this case."  *Id.* at p. 10.  The court based its decision upon the fact that the defendants were not Connecticut corporations, that the alleged exposure occurred aboard ships on navigable waters, and that "the defendants' products are claimed to have been aboard such vessels and the decedent is claimed to have worked on, or around, such products."

Consistent with *Hammer*, substantive maritime law must be applied in this case.  First, as in *Hammer*, the defendant in the instant case is not a Connecticut corporation.  GE is incorporated under the laws of the State of New York and has its principal place of business outside Connecticut.   Second, the alleged exposure to asbestos from GE products occurred aboard ships on navigable waters.  SOUMF ¶¶ 3, 7.  Plaintiff alleges exposure through his work at Electric Boat aboard submarines and ships that were undergoing overhaul or new construction.  *Id.*  Thus, there is no dispute that the alleged exposure occurred while the relevant ship was on navigable waters.

9

Lastly, Plaintiff's claims bear a significant relationship to traditional maritime activity and have the potential to have a disruptive impact upon maritime commerce. Exposure to asbestos comes within the general category of the risks of unsafe working conditions that have a potential impact on commercial shipping. *See Lambert v. Babcock & Wilcox, Co.*, 70 F. Supp. 2d 877, 884 (S.D. Ind. 1999); *see also Bartel v. A-C Product Liability Trust*, 461 F.Supp.2d 600, 602 (N.D. Ohio 2006) (claim based on merchant seaman's exposure to asbestos while aboard a vessel was governed under admiralty law). Similarly, allegations of acts and omissions on the part of a defendant concerning the use of asbestos in their products has a significant connection with maritime activity. *See Garlock Sealing Technologies, LLC v. Little*, 270 Va. 381, 384-386 (Va. 2005).

Here, Plaintiff claims that he was exposed to asbestos as a result of his work aboard submarines and ships at Electric Boat, which designed and built nuclear submarines for the U.S. Navy. SOUMF ¶¶ 4, 7. Specifically, regarding GE, Plaintiff's claims concern the alleged acts and omissions of GE in the manufacture, sale, and distribution of products aboard U.S. Navy ships. As such, Plaintiff's claims as to GE fall within the risks of unsafe working conditions that have a potential impact on commercial shipping and which have a significant connection with maritime activity.

Plaintiff has not submitted any evidence distinguishing this matter from the *Hammer* case. Plaintiff's claims against GE are all based on alleged exposure to asbestos from equipment aboard U.S. Navy ships; the work that Plaintiff claims exposed him to asbestos occurred while those U.S. Navy ships were on navigable

10

waters; and Plaintiff's claims have a potential impact on commercial shipping and have a significant connection with maritime activity.  Accordingly, and consistent with the precedent established by the court in *Hammer*, Connecticut choice-of-law principles militate in favor of the application of federal maritime law to the facts of this case.

      **B.**    **PLAINTIFF'S CLAIMS CANNOT SURVIVE SUMMARY JUDGMENT**

          **1.**    <u>**Plaintiffs cannot establish substantial factor causation under maritime law**</u>

      "Plaintiffs in products liability cases under maritime law may proceed under both negligence and strict liability theories.  Under either theory, a plaintiff must establish causation."  *Lindstrom*, 424 F.3d at 492; *see also Crews v. Air & Liquid Sys. Corp.*, 2014 U.S. Dist. LEXIS 20054 at *6-7 (N.Y.N.D. Feb. 18, 2014).  Specifically, "a plaintiff must show, for each defendant, that '(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered,' and (3) that the defendant manufactured or distributed the injurious product."  *Bray v. Ingersoll-Rand Co.*, 2015 U.S. Dist. LEXIS 19523 at *32-33 (D. Conn. Feb. 19, 2015) (quoting *Lindstrom*, 424 F.3d at 492).

      "In order to demonstrate that the allegedly defective product was a 'substantial factor' in causing the plaintiff" injury, a plaintiff must show that it is 'more likely than not' that exposure to the product caused his injuries."  *Bray*, 2015 U.S. Dist. LEXIS at *4 (citing *Lindstrom*, 424 F.3d at 492).  Notably,

          **Minimal exposure to a defendant's product is insufficient.  *Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient.*  Rather, where a plaintiff relies on proof of exposure to establish that a product was a substantial**

**factor in causing injury, the plaintiff must show a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.  In other words, proof of substantial exposure is required for a finding that a product was a substantial factor in causing injury.**

*Lindstrom*, 424 F.3d at 492 (internal quotations omitted; emphasis added); *see also Paquin v. Crane Co.*, 2017 U.S. Dist. LEXIS 48854 at *6 (D. Conn. Mar. 31, 217) (citing *Perkins v. Air & Liquid Sys. Corp.*, 2015 WL 4610671 at *6 S.D.N.Y. July 30, 2015)).

In other words, under maritime law, "proof of substantial exposure is required for a finding that a product was a substantial factor in causing injury." *Lindstrom*, 424 F.3d 488 at 493.  This standard makes clear that merely establishing that a particular manufacturer's product was present at a site or aboard a ship where the plaintiff worked is wholly insufficient.

Here, there is no evidence to establish that Plaintiff was exposed to any allegedly defective GE product and, moreover, Plaintiff cannot establish that his alleged exposure to any asbestos-containing GE product was a substantial factor in causing his injuries.  Thus, because the evidence falls short of establishing a substantial factor causation as to any asbestos-containing GE product, summary judgment should be granted in favor of GE.

a.    Plaintiff cannot establish that he was injuriously exposed to a GE product.

Plaintiff has failed to adduce any evidence suggesting that he was exposed to an asbestos-containing product manufactured, sold, or distributed by GE.  In *Paquin*, the court granted summary judgment in favor of Foster Wheeler where the plaintiff simply averred in an affidavit that Foster Wheeler's equipment was

12

"utilized on many, if not most, submarines constructed or overhauled at Electric Boat during [his] time of employment."  2017 U.S. Dist. LEXIS 48854 at *9.  The court stated that "with respect to Foster Wheeler, and the question of whether the plaintiff was exposed to its equipment, the answer is, in substance, 'maybe, but maybe not.  This is not sufficient to create a genuine issue of material fact as to whether the plaintiff was exposed to asbestos-containing products manufactured, sold, supplied or in any way created by Foster Wheeler."  *Id.*; *see also Bray*, 2015 U.S. Dist. LEXIS 19523 at *33-44 (finding that plaintiffs "failed to meet their evidentiary burden on the issue of causation" because they did not offer "evidence connecting [the plaintiff's] exposure to asbestos to products manufactured by" the defendants).

Discovery undertaken in this case fails to establish a genuine issue of material fact relating to Plaintiff's alleged exposure to asbestos through a product manufactured, sold or distributed by GE.  During his deposition, Plaintiff failed to identify GE, let alone an asbestos-containing GE product that he worked with or around.  SOUMF ¶ 9.  Moreover, Plaintiff testified that he did not perform any work, maintenance or repair on any equipment or machinery and did not provide any testimony regarding any work, maintenance or repair performed by others in his presence.  SOUMF ¶¶ 7-8.

Simply put, there is no evidence connecting Plaintiff's exposure to asbestos to any products manufactured by GE.  Any argument to the contrary would be purely speculative and conjectural.  *See Lindstrom*, 424 F.3d at 492; *Paquin*, 2017 U.S. Dist. LEXIS 48854 at *43.  Thus, Plaintiff has failed to establish

13

that a requisite element of causation – that he was exposed to an asbestos-containing GE product.  Absent such evidence, Plaintiff cannot maintain his claims against GE and summary judgment should enter in its favor.

  b.  **Plaintiff cannot establish that any GE product was a substantial factor in causing his injuries.**

Under maritime law, a plaintiff must also establish that the product to which he claims exposure "was a substantial factor in causing the injury he suffered." *Stark v. Armstrong World Indus., Inc*., 21 Fed. Appx. at 375.  A mere showing that the defendant's product was somewhere at the decedent's worksite is insufficient.  *Id.*  Instead, a plaintiffs must show "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural"  *Id.* at 376.  "In other words, *substantial* exposure is necessary to draw an inference from circumstantial evidence that the exposure was a *substantial* factor in causing the injury." *Id.* (emphasis in original); *see also Paquin*, 2017 U.S. Dist. LEXIS 48854 at *6.

In *Lindstrom*, the U.S. Court of Appeals for the Sixth Circuit affirmed the district court's grant of summary judgment for a defendant pump manufacturer. 424 F.3d at 495.  There, although the plaintiff had actually testified that the packing used to repack pumps contained asbestos, he failed to identify the defendant as a prevalent manufacturer of pumps aboard the vessels on which he worked.  Nor did he identify the defendant as a manufacturer of replacement packing. *Id.* In *Stark*, the Sixth Circuit affirmed the granting of summary judgment on behalf of defendant boiler manufacturers. In that case, the plaintiff had testified that he climbed inside the defendant's boiler "filled with asbestos

14

laden material" and cleaned it.  21 Fed. Appx. at 380.  Although the Court found that the plaintiff had shown exposure to asbestos and sufficiently identified its source, the Court also pointed out that he had served aboard the vessel where this boiler was located for less than two months.  *Id.* at 496-97.

Plaintiff bears the burden of proving that a GE asbestos-containing product, "'as it was used during [his] tenure could possibly have produced a significant amount of asbestos dust and that the asbestos dust might have been inhaled by [him].'"  *Peerman v. Georgia-Pacific Corp.*, 35 F.3d 284, 287 (7th Cir. 1994); *see Henderson v. Allied Signal, Inc.*, 373 S.C. 179, 185, 644 S.E.2d 724, 727 (2007) (holding that "presence in the vicinity of static asbestos is not exposure to asbestos"); *Benshoof v. National Gypsum Co.*, 978 F.2d 475, 477 (9th Cir. 1992) (noting the insufficiency of the plaintiffs' evidence which established "only that [the defendant's] asbestos may have been present at locations where [they] worked, but not that it was disturbed and or could have been inhaled at that time"); *Reaves v. Armstrong World Indus.*, 569 So.2d 1307, 1309 (Fla. App. [4[th] Dist.] 1990), *review denied*, 581 So.2d 166 (Fla. 1991) (a plaintiff must still show that such exposure "contributed substantially to producing the injury complained of").

Here, there is no evidence that Plaintiff worked with or around an asbestos-containing GE product at any time, let alone any evidence to establish the frequency and regularity of any work, maintenance or repair performed on a GE product in Plaintiff's presence.  Plaintiff testified that he did not perform any work, maintenance, or repair on any equipment or machinery that, and was unable to

ME1 30165767v.1

provide any testimony regarding work, maintenance or repair that others may have been performed in his presence.  SOUMF ¶¶ 7-9.

Plaintiff has failed to provide evidence of any exposure to a GE product, let alone the level exposure necessary for "a finding that [the] product was a substantial factor in causing injury."  *Lindstrom*, 424 F.3d 488 at 493; *see also Paquin*, 2017 U.S. Dist. LEXIS 48854 at *43.  As such, there is no genuine issue of material fact to be tried as to Plaintiff's claims and summary judgment should be entered in favor of GE.

### C.  SPOUSAL PLAINTIFF'S LOSS OF CONSORTIUM CLAIM IS DERIVATIVE AND CANNOT SURVIVE SUMMARY JUDGMENT

Since there is not a scintilla of evidence that Plaintiff's alleged injuries are the result of working with or near a GE product, let alone an asbestos-containing GE product, any derivative cause of action for loss of consortium is barred. "Although general maritime law does not provide relief for a claim for loss of consortium, a party may bring a common law claim for loss of consortium under state law."  *Bray*, 2015 U.S. Dist. LEXIS 19523 at *15-16 (citations omitted).  Under Connecticut law, a claim for loss of consortium is dependent on the existence of an underlying action.  *See United Servs. Auto Ass'n v. Kaschel (Estate of Kelly)*, 84 Conn. App. 139, 147 n.9 (2004).  "Loss of consortium is a derivative cause of action, meaning that it is dependent on the legal existence of the predicate action. That is to say, if an adverse judgment bars the injured spouse's cause of action, any claim for loss of consortium necessarily fails as well."  *Id.* (citing *Champagne v. Raybestos-Manhattan, Inc.*, 212 Conn. 509, 555-56 (1980); *Hopson v. St. Mary's Hospital*, 176 Conn. 485, 494 (1979)).

16

Here, the predicate action is Plaintiff's claim that a GE product proximately caused his injuries.   However, as stated earlier, Plaintiff has produced no evidence that he worked with or in proximity to an asbestos-containing GE product.   Further, Plaintiff has failed to produce any evidence that any such exposure was a substantial factor in causing his alleged injuries.   As such, because GE is entitled to summary judgment on Plaintiff's claim, this Court must also grant judgment in favor of GE on the derivative loss of consortium claim.

### D.   CO-DEFENDANTS' CROSS-CLAIMS FAIL FOR THE SAME REASONS SET FORTH ABOVE

Co-Defendants in this case have filed cross-claims against GE seeking contribution for Plaintiffs' alleged damages pursuant to Connecticut General Statutes Section 52-572o.  In addition, co-Defendants seek equitable contribution for GE's share of any judgment rendered in favor of Plaintiffs.   For the same reasons Plaintiffs' claims against GE cannot survive summary judgment, the claims of all cross-claim Defendants must also fail.  GE repeats and incorporates the above arguments concerning Plaintiffs' claims as to the claims of all cross-claim co-Defendants.   Accordingly, all claims of cross-claim co-Defendants cannot survive a summary judgment motion and this motion should be granted as to all such claims.

## IV.   <u>CONCLUSION</u>

There is no evidence that Plaintiff ever worked with or around, or was otherwise exposed to, an asbestos-containing product manufactured, sold or distributed by GE, let alone that any such alleged exposure was a substantial factor in causing his injuries.  Accordingly, Plaintiffs' claims against GE must fail

ME1 30165767v.1

and GE is entitled to summary judgment in its favor.  GE further requests that all claims of all plaintiffs and all cross-claims plaintiff's in this action be dismissed with prejudice and that it be afforded any and all further relief deemed appropriate by this Court.

Dated: April 12, 2019
       Hartford, Connecticut

Respectfully submitted,

DEFENDANT,
GENERAL ELECTRIC CO.

By: _/s/ Catherine A. Mohan_____
       Catherine A. Mohan (ct00340)
       Tara A. Sheldon (ct29898)
       McCarter & English, LLP
       CityPlace I
       185 Asylum Street
       Hartford CT 06103
       Phone: (860) 275-6700
       Fax: (860) 724-3397
       Email: cmohan@mccarter.com
       Email: tsheldon@mccarter.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated below. Parties may access this filing through the Court's CM/ECF System.

By: __/s/ Catherine A. Mohan_____
       Catherine A. Mohan

18