UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KURT CARLSON, ELAINE CARLSON<br>*Plaintiffs*, | : <br> : <br> : | |
| v. | : | No. 3:17-CV-1916 (VLB) |
| | : | |
| CBS CORPORATION ET AL.,<br>*Defendants.* | : <br> : | January 7, 2020 |

**Ruling on Motion for Summary Judgment [Dkt. 48]**

I. **Introduction**

Plaintiffs Kurt Carlson ("Mr. Carlson") and Elaine Carlson ("Ms. Carlson") (collectively, the "Carlsons") sue General Electric and multiple other defendants for statutory product liability damages under Connecticut General Statutes §§ 52-240a, 52-240b, and 52-572m., *et seq.*; for loss of consortium; and for common-law product liability. [Dkt. 1-1 (Compl.)]. General Electric now moves for summary judgment on the grounds that the Carlsons have not offered any admissible evidence demonstrating that Mr. Carlson was exposed to any asbestos-containing product manufactured by it. [Dkt. 48 (General Electric Mot. for Summ. Judgment)]. The Carlsons have not responded to the Motion for Summary Judgment. For the reasons below, the Court now GRANTS the motion.

II. **Standard for Summary Judgment Motion**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a*).* An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Ibid.*

Where a defendant presents admissible evidence tending to show there is no genuine issue of material fact for a jury to decide and she is entitled to judgment as a matter of law, a plaintiff must produce admissible evidence raising a genuine issue of material fact to defeat summary judgment. Fed. R. Civ. P. 56(c). Rule 56(c) "mandates the entry of summary judgment… against a party who fails to make a showing sufficient to establish the existence of an element essential to a party's case, and on which that party will bear the burden of proof at trial." *Bedor v. Friendly's Ice Cream Corp.*, 392 F. Supp. 2d 367, 373 (D. Conn. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"In determining whether that burden [of showing the absence of any genuine issue of fact] has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (citing *Anderson*, 477 U.S. at 255); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But "[m]ere speculation or conjecture is insufficient; there must be evidence on which a jury could reasonably find for the nonmovant." *Anderson*, 477 U.S. at 252; *see* Fed. R. Civ. P. 56(c). "The nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists." *Bedor*, 392 F. Supp. 2d at 373 (2005) (quoting *Celote.,* 477 U.S. at 322 (1986)).

III. **Facts**

The Carlsons allege that Mr. Carlson was exposed to various asbestos-containing products during the course of his employment as a radiological control technician at General Dynamics/Electric Boat Corp., Groton, CT from 1973 through 1974. [Dkt. 1-1, Count 1 ¶5]. The Carlsons allege that this exposure contributed to his contraction of asbestos-related mesothelioma and other asbestos-related pathologies. *Ibid.* During this time period, the Carlsons alleges that Mr. Carlson was exposed to asbestos-containing products manufactured by multiple defendants including General Electric. *Ibid.* at ¶ 6.

On September 20, 2017, the Carlsons provided answers to General Electric's Standard Interrogatories and Requests for Production. [Dkt. 48-2 (General Electric Statement of Facts) ¶5]. Mr. Carlson did not identify General Electric as an employer nor does he identify any asbestos-containing General Electric product to which he claims he was exposed. *Ibid.*

Mr. Carlson was deposed on October 16, 17, and 18 of 2017. *Id.* at ¶6. He did not identify General Electric as an employer, nor did he identify any asbestos-containing General Electric product to which he was allegedly exposed. *Id.* at ¶9. No other witnesses have been deposed in this case. *Ibid.*

IV. **Discussion**

i. *Governing Product Liability Law*

General Electric argues that substantive maritime law applies to the Carlsons' claims, and they do not respond. [Dkt. 48-1 (Mem. Supp. Mot. Summ. J.) at 5-11].[1]

To establish causation in an asbestos-related personal injuries tort claim under maritime law, "a plaintiff must show, for each defendant, that '(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered,' and (3) that the defendant manufactured or distributed the injurious product." *Bray v. Ingersoll-Rand Co.*, 2015 U.S. Dist. LEXIS 19523 at *32-33 (D. Conn. Feb. 19, 2015) (quoting *Lindstrom*, 424 F.3d at 492). "[T]o demonstrate that the allegedly defective product was a 'substantial factor' in causing the plaintiff'' injury, a plaintiff must show that it is 'more likely than not' that exposure to the product caused his injuries." *Bray*, 2015 U.S. Dist. LEXIS at *4 (citing *Lindstrom*, 424 F.3d at 492). Finally,

> Minimal exposure' to a defendant's product is insufficient to establish causation. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient. Rather, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.

*In re Asbestos Litig.*, No. CV 18-410-LPS-SRF, 2019 WL 6211371, at *3 (D. Del. Nov. 20, 2019) (quoting *Lindstrom*, 424 F.3d at 492); *see also Paquin v. Crane Co.*, 2017

---

[1] The Carlsons initially bring this product liability action under the Connecticut Product Liability Act, Conn. Gen. Stat. § 52-572m, and under a theory of negligence. [Dkt. 1-1]. As the CPLA is the exclusive remedy for any product defect action brought under Connecticut law, Conn Gen. Stat. § 52-572n(a), the Court assumes that the Carlsons' negligence claim is brought under maritime law.

U.S. Dist. LEXIS 48854 at *6 (D. Conn. Mar. 31, 217) (citing *Perkins v. Air & Liquid Sys. Corp.*, 2015 WL 4610671 at *6 S.D.N.Y. July 30, 2015)).

With respect to liability for after-applied insulation and replacement parts, the Supreme Court recently clarified:

> In the maritime tort context, a product manufacturer has a duty to warn when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reasons to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believes that the product's users will realize that danger.

*Air & Liquid Systems Corp. v. DeVries*, 139 S. Ct. 986, 995(Mar. 19, 2019). Thus, under maritime tort law, a defendant may be liable for after-applied insulation and replacement parts.

This Court has granted summary judgment in favor of an asbestos personal-injury defendant where the plaintiff simply averred the defendant's equipment was used on "many, if not most, submarines constructed or overhauled at Electric Boat during [his] time of employment," stating that such evidence was not "sufficient to create a genuine issue of material fact as to whether the plaintiff was exposed to asbestos-continuing products manufactured, sold, supplied, or in any way created by" the defendant. *Paquin*, 2017 U.S. Dist. LEXIS 48854 at *9. *See also Bray*, 2015 WL 728515 at *6 (granting summary judgment for the defendants where plaintiffs did not "demonstrate[] that the defendants manufactured or distributed asbestos-continuing products" used at plaintiff's workplace); *In re Asbestos Litig.*, No. CV 16-308-LPS-SRF, 2019 WL 3082196, at *5 (D. Del. July 15, 2019), *report and recommendation adopted sub nom. Hickman v. CBS Corp.,* No. CV 16-308-LPS-SRF, 2019 WL 4670873 (D. Del. Aug. 19, 2019) (granting summary judgment for the

defendant on the grounds that there was no genuine question that defendant's product was a substantial factor in causing plaintiff's injuries where the sole plaintiff testified that he worked with defendant's equipment, but could not place any defendant's pumps on any specific ship.)

Therefore, the Carlsons bear the burden of proving that Mr. Carlson was exposed to defendants' products and that these exposures were a "substantial factor" in his mesothelioma and other asbestos-related pathologies.

*ii. Analysis of Product Liability Claims*

General Electric argues that the Carlsons have failed to adduce any evidence to whether General Electric's products were a substantial factor in causing Mr. Carlson's injury because the Carlsons have not identified any instance where Mr. Carlson was exposed to any General Electric equipment, let alone any General Electric equipment with asbestos-containing components. [Dkt. 48-1. at 12-13 (citing Dkt. 48-2 at ¶¶ 5, 6, and 9]. Further, Mr. Carlson testified that he did not perform any work, maintenance or repair on any equipment or machinery, and did not provide any testimony regarding any work, maintenance or repair performed by others in his presence. *Id.* (citing Dkt. 48-2 at ¶¶7-8 ). The Carlsons have not responded to General Electric's Motion for Summary Judgment. Since the Carlsons have not produced any evidence on this question, the Court agrees that there is no genuine issue of material fact as to whether General Electric's products were a substantial factor in causing Mr. Carlson's injuries, and enters summary judgment in General Electric's favor.

### iii. Analysis of Consortium Claim

"Although general maritime law does not provide relief for a claim for loss of consortium, a party may bring a common law claim for loss of consortium under state law." *Bray*, 2015 U.S. Dist. LEXIS 19523 at *15-16 (citations omitted). Under Connecticut law, a claim for loss of consortium depends on the existence of the injured spouse's cause of action, such that "if an adverse judgment bars the injured spouse's cause of action, any claim for loss of consortium necessarily fails as well." *United Servs. Auto Ass'n v. Kaschel (Estate of Kelly)*, 84 Conn. App. 139, 147 n.9 (2004) (citing *Champagne v. Raybestos-Manhattan, Inc.*, 212 Conn. 509, 555-56 (1980); *Hopson v. St. Mary's Hospital*, 176 Conn. 485, 494 (1979)).

Here, because the Carlsons have failed to meet their evidentiary burden with respect to Mr. Carlson's product liability claims, Ms. Carlson's loss of consortium claim also fails.

### iv. Analysis of Cross-Claims

Co-Defendants Foster Wheeler, LLC and Crane Co. have filed cross-claims against General Electric seeking contribution for the Carlsons' alleged damages pursuant to Connecticut General Statutes § 52-572o. In addition, co-Defendants seek equitable contribution for General Electric's share of any judgment rendered in favor of the Carlsons. For the same reasons the Carlsons' claims against General Electric cannot survive summary judgment, the claims of the Cross-Claimants also fail.

## V. Conclusion

Therefore, the Court GRANTS General Electric's motion for summary judgment as to all claims. The Court dismisses with prejudice the Carlsons' claims against General Electric. The Court also dismisses with prejudice Foster Wheeler, LLC's and Crane Co.'s cross-claims against General Electric.

SO ORDERED this 7th day of January 2020 at Hartford, Connecticut.

_____/s/_____

VANESSA L. BRYANT
UNITED STATES DISTRICT JUDGE